**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-24220-Civ-SCOLA/TORRES

INES GARCIA,

      Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
the Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'
CROSS MOTIONS FOR SUMMARY JUDGMENT**

      This matter is before the Court on the parties' cross motions for summary judgment filed by Ines Garcia ("Plaintiff") [D.E. 21] and Andrew Saul, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 22] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching her unfavorable decision.  Under the limited standard of review that governs this case, the Court finds that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination.[1] For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 21]

---

[1] On October 12, 2019, the Clerk of the Court referred to the undersigned Magistrate Judge a Report and Recommendation on any dispositive matters. [D.E. 2].

1

should be **DENIED**, Defendant's motion for summary judgment [D.E. 22] should be **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on August 22, 1955 and has at least a high school education. Plaintiff has worked as a receptionist, telephone solicitor, and appointment clerk. Among other medical issues, Plaintiff has a history of vertigo, diabetes mellitus, arthropathies, hypertension, radiculopathy, and degenerative disc disease. Plaintiff has sought medical treatment for these medical issues since at least 2011, including being evaluated or treated by at least ten different doctors. Ultimately, Plaintiff alleges she was no longer able to work due to neck and back pain, urinary incontinence, anxiety, stenosis, and spondylosis.

On July 8, 2016, Plaintiff applied for supplemental social security income, and on July 12, 2016, she applied for disability insurance benefits. Plaintiff initially alleged a disability onset date of June 14, 2016 but amended it to June 15, 2016. The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing before the ALJ that took place on July 30, 2018. After considering the record and the testimony of a vocational expert ("VE"), the ALJ issued an unfavorable decision on November 19, 2018.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2016. The ALJ found at step two that Plaintiff had the severe impairments of vertigo, diabetes mellitus, arthropathies, hypertension, radiculopathy, and degenerative disc disease. The ALJ

also noted that Plaintiff's history of gastroesophageal reflux disease and medically determinable mental impairment of an affective disorder were non-severe impairments based on specific medical evidence and the social security regulations. The ALJ then determined that her severe impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R § 404.1567(a) and 416.967(a). The ALJ then proceeded to step four and determined that Plaintiff could perform her past relevant work as a receptionist, appointment clerk, and telephone solicitor. The ALJ relied on the testimony of the VE in making this determination.

On August 8, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

## II.   STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are

supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### *III.     ANALYSIS*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves her or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If an ALJ does not make such a finding, then the inquiry ends. *See id.* at § 404.1520(c). At step three, an ALJ compares the claimant's impairments with specific impairments under

the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses a claimant's RFC at this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the

exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff asserts that the ALJ's decision must be remanded for three separate reasons: (1) the ALJ failed to articulate why she did not accord controlling weight to two treating physicians' opinions, (2) the ALJ's RFC finding is not supported by substantial evidence, and (3) the ALJ improperly discredited Plaintiff's testimony regarding her symptoms and limitations. We consider each argument in turn.

### A. *The ALJ Properly Considered the Opinion Evidence*

Plaintiff first argues that the ALJ failed to articulate a single reason why she did not give controlling weight to the opinions of Dr. Roumeh Iordanov and Dr. Ramon Martinez, physicians that both treated Plaintiff.[2] An ALJ evaluates several factors when determining how much weight to accord a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization. 20

---

[2] Plaintiff refers to a Dr. Martinez Delgado in her motion, but we assume she means Dr. Ramon Martinez. The record does not contain an opinion from a Dr. Martinez Delgado.

C.F.R. §§ 404.1527(c), 416.927(c). These factors apply to both examining and non-examining doctors. *See id*. Absent good cause, an ALJ must give a treating[3] physician's opinion substantial or considerable weight. *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id*. Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are

---

[3]   A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014); *see also Laurey v. Comm' r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (holding that "[a]lthough the ALJ never stated the weight given to [a doctor's] treatment notes, the ALJ discussed the content of [the] notes, showing that the ALJ considered and gave weight to this medical evidence.").

Here, Dr. Iordanov evaluated Plaintiff twice, on September 27, 2017 and on June 22, 2018 for follow up. From these visits, Dr. Iordanov provided an "Arthritis Residual Functional Capacity Questionnaire" and a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" both dated Junes 29, 2018. These opinions concluded that Plaintiff was limited to an extremely reduced range of sedentary work and unable to complete an eight-hour day. With respect to Dr. Martinez, Plaintiff received regular care and treatment related to type 2 diabetes from him. On July 26, 2018, Dr. Martinez provided a "Diabetes Mellitus Physical Residual Functional Capacity Report" opinion as to Plaintiff's RFC. Dr. Martinez opined that Plaintiff was capable of a significantly reduced range of sedentary work for less than four hours in an eight-hour workday, and he indicated that she could be expected to miss more than four working days each month.

The ALJ referenced both opinions in her decision and stated that she accorded them partial weight, to the extent they were consistent with her RFC finding for Plaintiff. Plaintiff, however, misconstrues the decision and states that the ALJ failed to provide "a single reason why" she did not give controlling weight to the two

opinions, so the ALJ's decision must be remanded.

Plaintiff tries to support her demand for remand with case law. But like her mischaracterization of the record, each case cited involved the complete failure of an ALJ to discuss and assign any weight to a treating physician's opinion, which is clearly not the case here. *See Winschel*, 631 F.3d at 1179 ("[T]he ALJ . . . did not mention the treating physician's medical opinion, let alone give it "considerable weight." . . . It is possible that the ALJ considered and rejected [this] medical opinion[], but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."); *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) ("[I]t is uncontroverted that the reports of [the treating physician] were part of the record, and that the ALJ failed to address [them] regarding [the claimant's] condition and limitations during the relevant time period[.]").

Remand is thus not appropriate based on Plaintiff's first argument because the ALJ clearly considered the opinions of Drs. Iordanov and Martinez in her decision. And we know the ALJ's reason for having good cause to discount these opinions; they were inconsistent with other evidence, particularly the RFC finding. *See Phillips*, 357 F.3d at 1241. Because the ALJ's decision discussed the basis for the RFC finding, there is a record that allows us to determine whether the ALJ's conclusion to discount the doctors' opinions were rational and supported by substantial evidence. *See Winschel*, 631 F.3d at 1179. In other words, our inquiry should be whether substantial evidence supports the ALJ's RFC finding regardless of the two doctors'

10

opinions. This is Plaintiff's second argument, which we now address.

### B. *The RFC Finding is Supported by Substantial Evidence*

Next, Plaintiff argues that if the ALJ properly gave the opinions of Dr. Iordanov and Dr. Martinez controlling weight, substantial evidence would not support the ALJ's RFC finding. An RFC is what a claimant can still do despite his or her limitations and is an assessment based on all the relevant evidence in the record. An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 416.927(e)(2). The reason the Commissioner is tasked with this determination is because "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (citation omitted). The social security regulations

11

mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, at *6. As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer,* 395 F.3d at 1211) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL 1580416, *3 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specific[ally] and explicit[ly] set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x at 959-60) (alteration in original).

Here, substantial evidence supports the ALJ's RFC finding regardless of the opinions of Dr. Iordanov and Dr. Martinez. As an initial matter, the RFC determination is reserved for the ALJ, not doctors. *See Robinson*, 365 F. App'x at

999. Using this authority, the ALJ properly evaluated the evidence of record in reaching the RFC finding. Even though Plaintiff disagrees with the ALJ's conclusion, and would resolve the factual issues differently, the decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

Indeed, as discussed by the ALJ, Plaintiff's longitudinal treatment record documented benign or mild findings and conservative treatment. We illustrate three examples of this. First, although Plaintiff had a nodule in the right lobe of her thyroid, a fine needle aspiration biopsy returned benign results, and follow up ultrasounds showed size stability. And there was no indication in the record that Plaintiff received any treatment related to her thyroid, or otherwise required thyroid hormone replacement. Second, Plaintiff complained of episodic vertigo and dizziness, but no clear abnormalities were documented, and she later reported improvement following physical therapy and migraine treatment. By 2018, Plaintiff reported that the vertigo was "no longer a bother." [D.E. 12]. Third, imaging showed some degenerative changes in Plaintiff's spine, but Plaintiff generally exhibited full muscle strength and range of motion in all extremities, intact sensation, and normal gait and balance during physical examinations.

In addition, the ALJ considered the medical opinions of Dr. Marie Adam and Dr. Thomas Renny in making the RFC finding. Dr. Adam conducted a consultative examination in November 2016 on Plaintiff and found that Plaintiff had full grip strength and normal fine manipulation abilities. Dr. Adam further documented no

13

sensory deficit in Plaintiff's fine or gross motor function and that Plaintiff demonstrated full or nearly full range of motion in her spine and all extremities. Dr. Renny, the State Agency review consultant at the reconsideration level, opined that Plaintiff could perform a range of work at the light level, which was consistent with the overall medical evidence.

Turning back to the opinions of Dr. Iordanov and Dr. Martinez, the opinions were not only inconsistent with the objective medical evidence just discussed, they were also inconsistent with the corresponding physical exams conducted by the doctors, mostly based on Plaintiff's subjective symptoms, and conclusory RFC findings. For instance, Dr. Martinez identified no objective findings to support his opinion, deferring to Plaintiff's reported symptoms and diagnosis, which is not an appropriate basis for a medical opinion. *See Crawford*, 363 F.3d at 1159 (holding that an ALJ may discount a treating physician's opinion where it "appears to be based primarily on [the claimant's] subjective complaints of pain"). The ALJ also properly discounted Dr. Martinez's opinion that Plaintiff was limited to a significantly reduced range of sedentary work because it was just a conclusory RFC finding. *See Romeo v. Comm'r of Soc. Sec.*, 686 F. App'x 731, 733 (11th Cir. 2017) ("As to the final conclusion from Drs. Subervi and Subervi that [claimant] would find it difficult to hold a full-time job, that issue is reserved to the Commissioner and was not entitled to any weight."). With respect to Dr. Iordanov's opinions, they were mostly inconsistent with his own examination findings. On the two occasions he examined Plaintiff, he found normal range of motion, muscle strength, tone, and gait, along with negative straight

14

leg raising tests, and normal touch sensation.

In sum, it is clear the ALJ evaluated Plaintiff's medical condition as a whole when making the RFC finding, including consideration of the opinions of Drs. Iordanov and Martinez   Substantial evidence thus supports the finding that Plaintiff had the RFC to perform less than the full range of sedentary work in 20 C.F.R § 404.1567(a) and 416.967(a).

### C. *The ALJ Properly Evaluated Plaintiff's Subjective Symptoms*

Last, Plaintiff argues the ALJ improperly discredited Plaintiff's testimony regarding her subjective symptoms.  When a claimant attempts to establish a disability based on testimony of symptoms, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability."   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If an ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so."   *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough . . . ."   *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also* SSR 96-7P, 1996

WL 374186, at *2 (S.S.A. July 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

When evaluating the credibility of a claimant's reports of the severity of her or his condition, an ALJ may examine the extent to which the claimant has sought medical treatment. SSR 96-7p, 1996 WL 374186, at *7. An ALJ may also consider whether test results in medical records reveal normal findings. *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (finding that evidence supported the ALJ's determination that the claimant was only partially credible where no physician suggested claimant could not work, physicians reported mostly normal conditions, MRI scans were normal, doctors recommended conservative treatments, and claimant could engage in a range of activities). Moreover, an ALJ may consider a claimant's daily activities when making a credibility finding. *See* 20 C.F.R. § 404.1529(c)(3). When examining daily activities, an ALJ must consider the record as a whole. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (faulting Appeals Council's finding that claimant's "daily activities . . . have not been significantly affected" when the Appeals Council "ignored other evidence that her daily activities have been significantly affected"). This means, for example, that participation in everyday activities of short duration will not prevent a claimant from proving disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

Here, Plaintiff testified that she experienced disabling physical symptoms including dizziness, weakness, back and neck pain, and difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, talking, hearing, seeing, and using her hands. In evaluating Plaintiff's testimony, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective medical evidence and other evidence in the record.

The ALJ then discussed Plaintiff's daily activities and generally mild medical evaluations to illustrate this conclusion. For example, the Plaintiff testified that she was able to spend the day resting and could go to lunch with her husband. She could perform chair aerobics and go for a walk with poles in the same day. She was able to do light chores, spend time with others, spend about an hour a day on Facebook, and participate in a prayer group for 45 minutes to one hour each day. Consistent with her RFC analysis, the ALJ also found Plaintiff's self-reported symptoms inconsistent with her physical examinations that were mostly within normal limits or only required mild treatment and medically imaging results that generally showed benign or mild results.

Plaintiff fails to make any persuasive argument that the ALJ improperly discredited Plaintiff's inconsistent testimony. Instead, Plaintiff just regurgitates her testimony from the hearing into her motion and fails to cite to any case law that

17

would support her argument that the ALJ made reversible error. In a sense, Plaintiff is requesting us to reweigh her testimony against the objective medical evidence. This we cannot do. *See Crawford*, 363 at 1158-59; *Hunter,* 808 F.3d at 822. Therefore, there is substantial evidence that the ALJ properly discounted Plaintiff's testimony because of the objective medical evidence. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.927(c)(3)(i); *see also Wilson*, 284 F.3d at 1225-26 (finding that an ALJ is not required to accept a claimant's subjective allegations of pain/symptoms when inconsistent with the medical record).

As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212. The Court thus finds that the ALJ's conclusions are supported by substantial evidence. For these reasons, Plaintiff's motion for summary judgment [D.E. 21] is **DENIED** and Defendant's motion for summary judgment [D.E. 22] is **GRANTED**.

### IV.     CONCLUSION

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision. The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless. For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 21] be **DENIED**, that Defendant's motion for summary judgment [D.E. 22] be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 30th day of October, 2020.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge